# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **BUDGET CHARTERS, INC., and ALLEN NEWCOMER,** ) ) ) **Plaintiffs,** ) ) v. ) ) **IVAN PITTS, in his individual capacity as a Tennessee State Highway Patrolman, WILLIAM MATSUNAGA, in his individual capacity as a Tennessee State Highway Patrolman, BILL GIBBONS, in his individual capacity, DAVID W. PURKEY, in his official capacity as COMMISSIONER, TENNESSEE DEPARTMENT OF SAFETY AND HOMELAND SECURITY, RICHARD ROBERTS, in his individual capacity, and DAVID GERREGANO, in his official Capacity as COMMISSIONER, TENNESSEE DEPARTMENT OF REVENUE,** ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **Defendants.** ) | **Case No. 3:17-cv-722** **Judge Aleta A. Trauger** |

## MEMORANDUM & ORDER

Budget Charters, Inc., ("Budget") and Allen Newcomer have filed a Motion for Leave to Amend Second Amended Complaint (Docket No. 34), to which the several above-named defendants filed a Response (Docket No. 36), and the plaintiffs filed a Reply (Docket No. 39). For the reasons stated herein, Budget and Newcomer's motion will be granted.

# I. BACKGROUND & PROCEDURAL HISTORY[1]

Budget is a Pennsylvania-based operator of charter buses. (Docket No. 22 ¶ 12.) Newcomer is a driver employed by Budget. (*Id.* ¶ 1.) On April 21, 2016, Newcomer was operating a Budget bus in Davidson County, Tennessee, in connection with a trip chartered by a Pennsylvania-based group consisting primarily of high school students. (*Id.* ¶¶ 12–13.) While the students were in a museum, Newcomer waited on a bench reading a book until, in the words of the Second Amended Complaint:

> A Tennessee Highway Patrol officer, believed to be Ivan Pitts, approached Plaintiff Newcomer for unspecified reasons and with no possible reasonable suspicion of criminal activity. The officer told Plaintiff Newcomer that he wanted to examine the bus. Defendant Pitts' decision to perform a safety inspection was arbitrary and unpredictable. The bus had no obvious safety problems.

(*Id.* ¶ 14.) What ensued was a lengthy series of interactions, involving multiple officers, both at the site of the museum and later along the side of Briley Parkway, that resulted in Newcomer's being arrested and charged with unlawful use of drug paraphernalia, unlawful possession of a controlled substance, and driving under the influence—related, apparently, to Newcomer's possession of Vicodin for which he had a prescription and the presence of a straw or straws either on the bus or on his person. (*Id.* ¶¶ 14–30.) The State eventually entered a *nolle prosequi* with regard to those charges, and they were expunged—but only after a number of local Pennsylvania news stories about the incident, including reports mentioning Newcomer and Budget by name. (*Id.* ¶¶ 32–33.) On April 19, 2017, Budget and Newcomer filed their initial Complaint, alleging various constitutional violations related to the search of the bus and the arrest of Newcomer. (*Id.* ¶¶ 45–55.) Among the named defendants were Pitts and another Tennessee Highway Patrol officer, William Matsunaga. (*Id.*)

---

[1] The facts are taken from Budget and Newcomer's Second Amended Complaint and are accepted as true (or, where applicable, as a true account of Budget and Newcomer's contemporaneous understanding) only for purposes of the Motion for Leave to Amend.

When Budget and Newcomer received the Defendants' Initial Rule 26 Disclosures on August 23, 2017, however, they learned that the early actions that they had attributed to Pitts had actually been performed by a different officer, Bobby Barker, who was assisted by officers Ronnie Simmons and Kent Norris. (Docket No. 35-3, at 1–2.) Pitts had indeed been involved in the events giving rise to this case, but only later, after being called to the location where the bus was stopped off of Briley Parkway. (*Id.* at 2.) By the time Budget and Newcomer received the Disclosures, the defendants had already filed a Motion to Dismiss (Docket No. 25), which remains pending. On October 19, 2017, Budget and Newcomer filed the instant Motion For Leave to Amend. (Docket No. 34.)

In addition to adding Barker, Simmons, and Norris as defendants, the Proposed Third Amended Complaint revises a number of allegations to attribute previously described actions to those new defendants. The table below reflects the key changes:

| ¶ | Second Amended Complaint (Docket No. 22) | ¶ | Proposed Third Amended Complaint (Docket No. 34-1) |
|---|---|---|---|
| 14 | At about 10:00 a.m., while the group was in the museum, Plaintiff Newcomer was sitting on a park bench reading a book. **A Tennessee Highway Patrol officer, believed to be Ivan Pitts**, approached Plaintiff Newcomer for unspecified reasons and with no possible reasonable suspicion of criminal activity. **The officer** told Plaintiff Newcomer that he wanted to examine the bus. **Defendant Pitts' decision** to perform a safety inspection was arbitrary and unpredictable. The bus had no obvious safety problems. | 14 | At about 10:00 a.m., while the group was in the museum, Plaintiff Newcomer was sitting on a park bench reading a book. **Tennessee Highway Patrolmen Trooper Bobby Barker, Sergeant Simmons, and Sergeant Norris** approached Plaintiff Newcomer for unspecified reasons and with no possible reasonable suspicion of criminal activity. **The Tennessee Highway Patrolmen** told Plaintiff Newcomer that they wanted to examine the bus. The decision of **Defendants Trooper Barker, Sergeant Simmons and Sergeant Norris** to perform a safety inspection was arbitrary and unpredictable. The bus had no obvious safety problems. |
| 17 | Soon thereafter, **an as-yet unidentified Tennessee Highway Patrol ("THP") officer** either arrived at the Parthenon on his own initiative or was summoned by Defendant Officer Pitts. **This THP officer** correctly noted that the tire was ok and instructed Defendant Officer Pitts to remove the red tag. At that point, any reasonable suspicion, if there had been any suspicion on the part of Defendant **Officer Pitts**, vanished. | 17 | Soon thereafter, **Sergeant Simmons or Sergeant Norris** correctly noted that the tire was ok and that the red tag should be removed. At that point, any reasonable suspicion, if there had been any suspicion on the part of **these Defendants**[,] vanished. |

4

| | | | |
|---|---|---|---|
| 18 | Without any reason, Defendant **Officer Pitts** stated that he was going to follow the bus back to the hotel and finish the inspection. The bus then proceeded on toward its next destination, the Days Inn at Opryland. Defendant **Officer Pitts** had retained Plaintiff Newcomer's log book, medical certifications and driver's license. **He** also had retained the registration papers for the vehicle and they have never been returned. These actions of **Defendant Officer Pitts** in restricting the freedom of Plaintiff Newcomer constitute an unconstitutional, warrantless arrest without reasonable suspicion and without probable cause. | 18 | Without any reason, **Trooper Barker** stated that he was going to follow the bus back to the hotel and finish the inspection. The bus then proceeded on toward its next destination, the Days Inn at Opryland. **Defendants** had retained Plaintiff Newcomer's log book, medical certifications and driver's license. **They** also retained the registration papers for the vehicle and they have never been returned. These actions of **Defendants Trooper Barker, Sergeant Simmons and Sergeant Norris** in restricting the freedom of Plaintiff Newcomer constitute an unconstitutional, warrantless arrest without reasonable suspicion and without probable cause. |
| 19 | At no point, while the bus was parked outside the Parthenon, did **Officer Pitts, or any other law enforcement officer**, express any concern that Newcomer might be under the influence or that he had white powdery substance in his nose. | 19 | At no point, while the bus was parked outside the Parthenon, did **Trooper Barker, Sergeant Simmons or Sergeant Norris**, express any concern that Plaintiff Newcomer might be under the influence or that he had white powdery substance in or around his nose. |
| 20 | It would be clear to a reasonable officer that Defendant **Officer Pitts'** conduct was unconstitutional and unlawful in the situation described. | 20 | It would be clear to a reasonable officer that the conduct of **Trooper Barker, Sergeant Simmons and Sergeant Norris** was unconstitutional and unlawful in the situation described. |
| 22 | Defendant **Officer Pitts** turned on his blue lights and required Plaintiff Newcomer to pull the bus over to the side of the road. Plaintiff Newcomer got off the bus and **Defendant Pitts** never permitted him to get back on the bus. | 22 | Defendant **Trooper Barker**, who was following Plaintiff Newcomer and Plaintiff Budget Charters' bus, turned on his blue lights and required Plaintiff Newcomer to pull the bus over to the side of the road on Briley Parkway. Plaintiff Newcomer got off the bus and **the Tennessee Highway Patrolmen** never permitted him to get back on the bus. |
| | N/A | 23 | One of the Tennessee Highway Patrolmen called Defendant Trooper Ivan Pitts to come to Briley Parkway where the bus was located. |

| | | | |
|---|---|---|---|
| 29 | **Defendant Pitts** did not mention any of these observations when he was at the Parthenon. | 30 | Defendants **Trooper Barker, Sergeant Simmons and Sergeant Norris** did not mention any of these observations when they were at the Parthenon. |
| 41 | Defendant Trooper Pitts had a history of noncompliance with [Tenn. Code Ann. §] 65-15-101 et seq., but Defendant Matsunaga, Defendant Gibbons and Defendant Roberts ignored Defendant Pitts' conduct. | 42 | Defendant Trooper Pitts had a history of noncompliance with [Tenn. Code Ann. §] 65-15-101 et seq., but Defendants **Sergeant Simmons, Sergeant Norris**, Lieutenant Matsunaga, Defendant Gibbons and Defendant Roberts ignored Defendant Trooper Pitts' conduct. |
| 48 | Defendant **Pitts** knowingly violated Plaintiffs' constitutional rights under the Fourth Amendment to be free from unreasonable searches and seizures. | 49 | Defendants **Trooper Barker, Sergeant Simmons and Sergeant Barker [sic]** knowingly violated Plaintiffs' constitutional rights under the Fourth Amendment to be free from unreasonable searches and seizures. |

In short, under the Proposed Third Amended Complaint, a number of actions previously attributed to Pitts alone would now be attributed collectively to Barker, Simmons, and Norris or to Barker alone; some actions previously attributed to an unnamed patrolman would now be attributed to Simmons and Norris; and some supervisory failures previously attributed to other named defendants would now be attributed to those defendants as well as to Simmons and Norris.

## II. LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427

F.3d 996, 1001 (6th Cir. 2005). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

### III. ANALYSIS

The defendants argue that an amendment adding Barker, Simmons, and Norris as defendants would be futile because Budget and Newcomer's causes of action against those new defendants would be untimely. "The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). The applicable limitations period in Tennessee is one year. Tenn. Code Ann. § 28-3-104(a); *see Howell v. Farris*, 655 F. App'x 349, 351 (6th Cir. 2016). "Although the applicable time period is borrowed from state law, the 'date on which the statute of limitations begins to run in a § 1983 action is a question of federal law.'" *Howell*, 655 F. App'x at 351 (quoting *Eidson*, 510 F.3d at 635). Under federal law, the limitations period ordinarily begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* That is, the cause of action accrues upon the occurrence of the event that "should have alerted the typical lay person to protect his or her right." *Id.* (quoting *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). At that point, the plaintiff has a "complete and present cause of action" such that he may "file suit and obtain relief." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). The allegedly unlawful search and arrest in this case took place on April 21, 2016. Because the original Complaint was filed within one year of that date, it was timely.

Generally speaking, an amendment that "adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *In re Kent Holland Die Casting & Plating*, 928 F.2d 1448, 1449 (6th Cir. 1991). Such an amendment "establishes a new and independent cause of action which cannot be maintained when the statute has run, for the amendment is one of substance rather than one of form and brings into being one not presently in court." *United State ex rel. Statham Instruments, Inc. v. W. Cas. & Surety Co.*, 359 F.2d 521, 523 (6th Cir. 1966). For example, where a plaintiff attempts to add additional defendant entities which were later found to have acted in concert with the original, properly named defendants, those additions constitute new causes of action for which there is no relation back. *See Venezia v. 12th & Div. Props., LLC*, No. 3:09-cv-430, 2010 WL 3122787, at *3 (M.D. Tenn. Aug. 6, 2010).

Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure, however, creates an exception whereby a plaintiff may amend his complaint to change the party or the naming of the party against whom a claim is asserted, and that amendment will relate back to the date of the original pleading if: (1) the claim asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (2) the added party received notice of the suit in the 120 days following the filing of the original complaint; (3) the notice was such that the added party will not be prejudiced in maintaining a defense on the merits; and (4) the added party knew or should have known that, but for a mistake of the identity of the proper party, the action would have been brought against him. Fed. R. Civ. P. 15(c); *Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001).

Courts have consistently held that Rule 15(c)(1)(C) permits an amendment to relate back where a plaintiff seeks to substitute a correct party for a previously improperly named defendant

or to correct a misnomer. *See, e.g.*, *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 557 (2010) (permitting relation back where a plaintiff filed suit against the wrong defendant due to a mistake and sought to substitute the proper defendant after the limitations period had expired). A "mistake," as the term is used in Rule 15(c)(1)(C), occurs where the wrong party is blamed while the real culprit remains unknown, and also where the plaintiff has full knowledge of all relevant actors but lists the technically incorrect parties. *Pullins v. Klimley*, No. 3:054–cv–082, 2008 WL 85871, at *11 (S.D. Ohio Jan. 7, 2008).

The Sixth Circuit has held that Rule 15(c)(1)(C)'s mistake requirement precludes applying the rule in cases where the plaintiff originally named a "John Doe" defendant and seeks to amend the complaint to substitute that defendant's actual identity. *Wiggins v. Kimberly-Clark Corp.*, 641 F. App'x 545, 549 (6th Cir. 2016); *Brown v. Cuyhoga Cty.*, 517 F. App'x 431, 433-34 (6th Cir. 2013); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). That interpretation is consistent with a literal reading of Rule 15(c)(1)(C): referring to a person whose name one does not know as "John Doe" is not, after all, a "mistake," but rather an intentional, accurate use of the term "John Doe" as it is typically used in the context of litigation. If there was no mistake, Rule 15(c)(1)(C) cannot apply.

The defendants ask the court to treat this matter as analogous to the Sixth Circuit's John Doe cases and hold that Budget and Newcomer's claims against the new proposed defendants should not relate back. Budget and Newcomer, however, did not file their suit against John Doe defendants, "unknown defendants," or any other nameless party. They sued specific individuals, including Pitts. Insofar as Budget and Newcomer now seek to attribute Pitts' actions to Barker, this presents a paradigmatic situation of plaintiffs having "mistakenly sue[d] party A instead of party B," as contemplated by Rule 15(c)(1)(C). *Venezia*, 2010 WL 3122787, at *4. The addition

of Barker, therefore, falls within the class of mistakes for which Rule 15(c)(1)(C) allows relation back, if that Rule's other requirements are met.

The original Complaint, however, did not claim that Pitts had acted in concert with two other patrolmen from the start of his interaction with Newcomer. Rather, it stated that an unnamed patrolman arrived later—an allegation that has been revised to be attributed to Simmons and Norris, whom the proposed Third Amended Complaint also claims, for the first time, were present throughout that initial interaction. Simmons and Norris, then, are indeed the equivalent of either newly added co-actors or named defendants being offered in the place of a previous John Doe. Under the law of this circuit, such amendments do not relate back to the original complaint. Budget and Newcomer have only established a Rule 15(c)(1)(C)-qualifying mistake, then, as to Barker.

With regard to Rule 15(c)(1)(C)'s notice requirement, Budget and Newcomer suggest that, given the timing of the disclosures in this case, it is highly implausible that Barker was not made aware of the action within 120 days. Be that as it may, the court does not need to definitively resolve the question of notice under Rule 15(c) at this point. The fact that it is significantly likely that Budget and Newcomer can satisfy that requirement is enough to establish that their amendment is not futile. If Barker, once added, wishes to raise the statute of limitations as a defense and argue that Rule 15(c)'s notice requirements were not met, he will be free to do so.

Budget and Newcomer argue, in the alternative, that, even if their proposed amendments do not relate back, the statute of limitations has not run with regard to Simmons and Norris because Budget and Newcomer did not discover Simmons and Norris's identities until the Initial Disclosures. Budget and Newcomer first premise their argument on an application of

Tennessee's discovery rule, which they suggest is applicable because the federal courts, in applying state statutes of limitations in § 1983 actions, also apply state doctrines of tolling. (Docket No. 35, at 8.) Tennessee's discovery rule, however, is—despite Budget and Newcomer's protestations to the contrary (Docket No. 39 at 5)—fundamentally a rule regarding when a cause of action accrues. *See Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 143 (Tenn. 2001) ("[T]he discovery rule . . . provides that a cause of action accrues and the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.") (internal quotation marks & citation omitted). The accrual of a § 1983 claim is governed by federal law. *Howell*, 655 F. App'x at 351. Budget and Newcomer have not identified any federal case law that would make accrual of a § 1983 claim dependent on a plaintiff's knowing the identities of all defendants. *See Clardy v. Bicigo*, No. 12-cv-11114, 2012 WL 5986630, at *3 (E.D. Mich. Nov. 29, 2012) ("The law of limitations [in a § 1983 case] focuses on the event that caused Plaintiff's harm, not on the identity of the perpetrator of the harm."); *Marksbury v. Elder*, No. 5:09-cv-24-REW, 2011 WL 1832883, at *4 (E.D. Ky. May 12, 2011) ("Accrual simply does not await identification of a particular wrongdoer."); *Easterly v. Budd*, No. 4:06-cv-00186, 2006 WL 2404143, at *8 (N.D. Ohio Aug. 18, 2006) ("Federal procedural law provides that a plaintiff need not be aware of every detail or person involved in causing his injury for the limitations period to commence.").

Finally, Budget and Newcomer argue that their claims against Simmons and Norris are timely due to equitable tolling under federal law, even if no Tennessee doctrine of tolling is available. State time limitations are only applicable to § 1983 claims insofar as they are consistent with federal law and policy. *See Harris v. United States*, 422 F.3d 322, 331 (6th Cir.

2005) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–67 (2005)). Accordingly, a number of courts have held that, in the context of § 1983, "a body of state tolling law that lacks a provision for equitable tolling is inconsistent with the provision of a complete federal remedy . . . and therefore is overridden by the federal doctrine." *Heck v. Humphrey*, 997 F.2d 355, *aff'd on other grounds*, 512 U.S. 477 (1994); *see also Lake v. Arnold*, 232 F.3d 360, 370 (3rd Cir. 2000) ("Equitable tolling can be applied to suits brought under the federal civil rights statutes when the state statute of limitations would otherwise frustrate federal policy . . . ."); *Friedmann v. Campbell*, 202 F.3d 268, 1999 WL 1045281, at *2 (6th Cir. Nov. 8, 1999) (table opinion) (holding that, where plaintiff sued Tennessee official and other "John Doe" defendants for constitutional violations, district court should consider on remand whether equitable tolling applies, if, "through no fault or lack of diligence on his part, [the plaintiff] was unable to sue before, even though the defendant took no active steps to prevent him from suing"). Tennessee's own Supreme Court has acknowledged that Tennessee law's lack of equitable tolling represents a departure from the principles embodied in federal law. *See Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012) ("[U]nlike other state courts and the federal courts, [Tennessee courts] have declined to recognize the doctrine of equitable tolling in civil cases."). This court, accordingly, will apply federal principles of equitable tolling in this case. *Cf. Lyons v. Metro. Gov't of Nashville & Davidson Cty.*, 416 F. App'x 483, 492 (6th Cir. 2011) (suggesting that district court's decision on whether to apply equitable tolling to § 1983 claim governed by Tennessee statute of limitations was subject to review for abuse of discretion).[2]

---

[2] A recent unpublished Sixth Circuit opinion creates some doubt with regard to whether federal equitable tolling applies in § 1983 actions. *See Roberson v. Macnicol*, 698 F. App'x 248 (6th Cir. 2017). In that case, however, the plaintiff had not alleged an inconsistency between the relevant state's doctrine of equitable tolling and its federal counterpart. Budget and Newcomer, in contrast, expressly argue that,

12

Equitable tolling is available where a plaintiff demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The doctrine of equitable tolling is to be applied sparingly, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), and typically arises "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control," *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003). In determining whether equitable tolling is available, courts may consider (1) whether the plaintiff had actual notice of the filing requirements; (2) whether the plaintiff had constructive notice of the filing requirements; (3) whether the plaintiff diligently pursued his rights; (4) whether the defendant is prejudiced; and (5) whether the plaintiff's ignorance of the relevant requirement was reasonable. *McSwain v. Davis*, 287 F. App'x 450, 455 (6th Cir. 2008).

Here, Budget and Newcomer do not claim that they were ignorant of the need to file suit against the defendants within one year—merely that they were ignorant of the identities of all of the appropriate defendants. The question of equitable tolling therefore hinges primarily on the reasons for that ignorance. Based on the limited information in the record, the court cannot say, as a matter of law, that the plaintiffs' ignorance was unreasonable or the result of insufficient diligence on their part. Indeed, Budget and Newcomer's limited understanding appears to have been occasioned, at least in part, by the defendants' and other officials' own languid pace at revealing all of the details surrounding Newcomer's arrest. If Budget and Newcomer's account is accurate, then Newcomer went through the entire process of being charged with a number of serious offenses and successfully obtaining an entry of *nolle prosequi* on those charges without

---

insofar as Tennessee law does not provide for equitable tolling here, it is inconsistent with federal law or policy. (Docket No. 39 at 5.)

the government ever revealing the identity of the officers who actually precipitated the underlying situation. Then, when the defendants received a Complaint that at least some defendants should have immediately recognized as having misidentified one key individual and misunderstood the role of others, those defendants waited an additional four months to reveal the error. Budget and Newcomer have a meaningful chance of showing that the statute of limitations was equitably tolled in the face of such a situation. Simmons and Norris, like Barker, will have the opportunity to argue the statute of limitations once added to the case.

None of the other Rule 15 factors weighs against allowing the proposed amendments. Budget and Newcomer's ignorance of the officers' involvement in the case does not appear to be the result of bad faith. Nor would allowing an amendment, at this still early stage in the proceedings, significantly prejudice the already-named defendants—particularly given that two other Tennessee Highway Patrol Officers, Pitts and Matsunaga, were already parties to the case. The court accordingly will allow this amendment to go forward, while stressing that future attempts to amend will be met with mounting scrutiny.

Because the purpose of this amendment is to revise which actions are attributed to which officers, many of the arguments raised in the pending Motion to Dismiss (Docket No. 25) may apply with equal force to the newly amended complaint. Nevertheless, the interests of judicial economy and of allowing the defendants, including Barker, Simmons, and Norris, to respond fully to the Complaint at issue counsel in favor of denying the Motion to Dismiss without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Budget and Newcomer's Motion for Leave to Amend Second Amended Complaint (Docket No. 34) is **GRANTED**. The defendants' Motion to Dismiss

Second Amended Complaint (Docket No. 25) is **DENIED AS MOOT**, without prejudice to their filing a renewed motion to dismiss that is addressed to the new pleading.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge